A. B. SHANKLAND v. D. W. PHILLIPS and others.

October Term, 1877.

COMMON-SCHOOL DISTRICTS — LIABILITIES. — A debt of a common-school district, legally created by an existing directory or board of education, for a lot on which to erect a school-building, will, in the absence of any legislative intent to the contrary, continue binding on the district, and enforceable against a subsequent set of officers, although the Legislature may have repeatedly changed the organization of the directory or board by repealing old laws and reënacting new ones, the district itself continuing to occupy the same territorial limits.

*R. L. Morris*, for complainant.

THE CHANCELLOR.— On demurrer. Bill filed March 11, 1875. On September 26, 1868, the complainant executed to "D. W. Phillips, E. J. Morris, and Thomas McGavock, Directors and Board of Education of the Thirteenth Civil District of Davidson County, Tennessee, and their successors in office," a bond, conditioned to make " to the said directors, etc., or their successors in office," a general warranty deed to certain land in said Thirteenth Civil District, upon the payment of the purchase-money. On the same day, an obligation for the payment of the purchase-money in instalments, the last instalment falling due on January 1, 1873, was given to the complainant by D. W. Phillips, E. J. Morris, and Thomas McGavock, describing themselves therein as " Directors and Board of Education of the Thirteenth Civil District of Davidson County, Tennessee," and adding below their signatures the words " Directors, etc." The bill is filed for the purpose of subjecting the land sold to the satisfaction of the unpaid purchase-money, and alleges that defendants Christopher Powers, John Leonard, and E. Richmond constitute the present directory and Board of Education of the Thirteenth Civil District. The subpœna was issued against the persons who were directors at the date of the sale, as well as the individuals last named. Two of these latter have joined in a demurrer, assigning as causes, that the original

vendees purchased as individuals, and had no power to con-
tract in their official capacity, or to bind the demurrants;
that the demurrants are not successors in office of said ven-
dees, the law under which the latter held office having been
repealed; and that neither they nor the school-district are
bound by the contract sought to be enforced.

The demurrer is to the whole bill; and inasmuch as the
complainant is clearly entitled to enforce his lien as vendor
on the land sold, and for this purpose to have the Directors
and Board of Education of the Thirteenth Civil District now
in office before the court, the demurrer is too broad, and
must be overruled. I presume, however, that it is the
object of both parties to have the main question raised by
the demurrer determined, and as this can be done now as
well as at the hearing on the merits, I have no objection to
disposing of it. That question is, whether the new board
and the funds under their control .can be held liable for the
debt created by the original contract.

The Code, which went into operation on May 1, 1858,
brought forward the various laws previously in existence
touching common schools, and arranged their provisions
systematically, from section 963 to section 1046 inclusive.
Under this system, the civil districts of each county consti-
tuted school-districts, and three commissioners, elected by
the inhabitants of the district, were intrusted with the
management and control of the schools in the district.
They were, by section 1001, clothed with the powers of a
corporation, so far as to enable them " to take and hold any
property transferred to them for the use of the common
schools in such district," to sue for and receive any funds
due the same, etc. By section 1002 it is provided that if
judgment is rendered against them, or any one of them, the
same shall be paid out of the money due the district when
the suit was commenced, if the court or justice who tried
the case should certify that the commissioners defended the
suit in good faith on behalf of the district. By sections

1012, 1013, the location and erection of school-houses are recognized as within the duties of the commissioners, and subject to their direction.

By the act of March 5, 1867, ch. 27, this system was nominally changed, but in reality substantially reënacted, except where a civil district included several school-districts, an exception which has no bearing on this case, the Thirteenth Civil District of this county consisting of only one school-district. Each school-district, under this act, elected three directors by popular vote, and these directors, where the civil and school districts were one, were authorized to discharge all the duties of the Civil District Board of Education, composed of one director from each school-board. They were intrusted with the duties which, by the Code, were conferred upon the school-commissioners, elected in the same way, and consisted of the same number. By section 9 of the act, the Civil District Board of Education were constituted a body-politic and corporate, with power to contract and be contracted with, sue and be sued, etc. " And all conveyances of real estate which may be made to said board shall be to said board in their corporate name, and to the successors in office." And by section 11 the board is clothed with power to build school-houses, and to " purchase or lease sites therefor."

This act was amended by the act of March 14, 1868, by the fifteenth section of which the board was authorized to condemn land for a site for a school-house, and to " secure the title and pay for the site " thus obtained.

Both of these acts were expressly repealed by the act of December, 14, 1869, ch. 33, consisting of eleven sections. And this act was amended at the same session by the act of February 15, 1870, ch. 110, reviving the Code.

On July 7, 1870, the Legislature undertook to remodel the common-school system, amending their work by another act on February 2, 1871. These are chapters 64 and 110 of the printed statutes, and were embodied in T. & S. Rev.

of the Code, — the first in sections 962*a* to 1036*a* inclusive, and the latter in sections 1038*a* to 1044*a* inclusive. By another act, of March 15, 1873, ch. 25, "to establish and maintain a uniform system of public schools," the Legislature again reënacted the substance, while changing the words, of previous enactments. The schools are, in each of these last acts, again put under the control of three persons elected by the people, being called in the first "district school-commissioners," and in the last "district school-directors." Their duties and powers are substantially the same. By act of 1871, ch. 110, sec. 6, the commissioners may purchase and hold such real estate as may be necessary for the erection of school-houses, and "may pay for such real estate and improvements out of any money in their hands or subject to their control as such commissioners." By section 22, chapter 25, of the act of 1873, each school-district may take, hold, and convey property. And by section 45, the inhabitants of the school-district are incorporated, upon record made of the district in the Chancery Court, with power to purchase and hold, "in the name of their respective board of directors," such real estate and school furniture as may be necessary for school purposes.

The organization, mode of conducting the business of education, and the powers intrusted to the officials are fundamentally the same throughout all this seemingly varied legislation. There has been but one system all the time, in essentials. The various acts have undoubtedly been intended by the Legislature as parts of one whole, each new set of officials stepping into the shoes of their predecessors and continuing their work. The property and rights of the school-districts have been the same all the time; and, in the absence of any legislative intent to the contrary, the duties and obligations of the district would, in like manner, remain the same.

The common-school system, whatever may have been its form, was a public institution in the nature of a municipal or *quasi*-municipal corporation, created as an arm of the

government, for a specific purpose, and subject to the will of the Legislature. In reference to municipal corporations, the rule from the earliest time has been that a change of name or function would not affect obligations or franchises. *Luttrel's Case*, 4 Co. 87 *b; Haddock's Case*, Raym. 439 ; *s. c.*, Vent. 355. Entirely new charters, upon a total cessation for years of user under an old charter, have been held to have no greater effect. *Colchester* v. *Seaber*, 3 Burr. 1866. "Many corporations," says Lord Mansfield, "for want of legal magistrates, have lost their activity, and obtained new charters. And yet it has never been disputed but that the new charters revive and give activity to the old corporation. Where the question has arisen upon any remarkable meta--morphosis, it has always been determined ' that they remain the same as to debts and rights.'" A change in the form of government, it is a principle of international law, does not annul preëxisting rights. So, the change in the form of government of a municipal corporation, as by erecting a borough into a city, does not even affect existing borough ordinances. *Trustees of Erie Academy* v. *City of Erie*, 31 Pa. St. 515. Our own statute-books are full of instances where new charters have been granted to municipal corporations, with a change of name, as where, within recent memory, the corporation of the Mayor and Aldermen of Nashville was rechartered as the Mayor and City Council of Nashville, without any person supposing that former obli-gations were in the least interfered with. The subject has, within the last two years, been carefully considered, where large amounts were involved, by Judge Woods in *Milner* v. *Pensacola*, 2 Woods, 638, and by the Supreme Court of the United States in *Broughton* v. *Pensacola*, 93 U. S. 266. The conclusion of the latter court, expressed by Mr. Jus-tice Field with his usual felicity, can admit of no doubt. "When," he says, " a new form is given to an old munici-pal corporation, or such a corporation is reorganized under a new charter, taking in its new organization the place of

the old one, embracing substantially the same corporators and the same territory, it will be presumed that the Legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs ; and, in the absence of express provision for their payment otherwise, it will also be presumed in such case that the Legislature intended that the liabilities, as well as the rights of property, of the corporation in its old form should accompany the corporation in its reorganization.''

There is not the slightest indication in any of the acts of the Legislature touching the common-school system that preëxisting rights should not continue as before, the new officers taking possession of the property held by their predecessors, and, of course, subject to the liabilities incurred for such property. '' Debts and rights '' remain as before. Only the clearest declaration of legislative intent to the contrary would change a rule so consonant with common sense and common honesty.

The demurrer must be overruled.