### BROUGHTON *v.* PENSACOLA.

A change in the charter of a municipal corporation, in whole or part, by an amendment of its provisions, or the substitution of a new charter in place of the old one, embracing substantially the same corporators and the same territory, will not be deemed, in the absence of express legislative declaration otherwise, to affect the identity of the corporation, or to relieve it from its previous liabilities, although different powers are possessed under the amended or new charter, and different officers administer its affairs.

APPEAL from the Circuit Court of the United States for the Northern District of Florida.

Argued by *Mr. P. Phillips* and *Mr. Thomas G. Jones* for the appellant.

Submitted on printed arguments by *Mr. C. C. Yonge* for the appellee.

MR. JUSTICE FIELD delivered the opinion of the court.

By an act passed on the 2d of March, 1839, by the then Territory, now State, of Florida, the city of Pensacola, at the time a pre-existing corporation, was rechartered, and its powers were vested in a mayor and board of aldermen, who were, at all times, to continue "to act in their respective functions" until the election and qualification of their successors in office. Among the powers conferred by the charter was the power to borrow money, not exceeding $5,000 a year, and to levy taxes and provide for their collection, with a limitation of the amount to be levied upon real estate to three-fourths of one per cent.

In December, 1850, by an amendatory act, these limitations were repealed, and a larger loan and a greater rate of taxation upon real estate were allowed. By a further amendatory act, passed on the 3d of January, 1853, the mayor and aldermen, with the consent of a majority of the corporation, were author-

ized to subscribe, in the name of the city, any amount of money which they might deem necessary to any railroad leading from the city ; and, for the purpose of procuring the amount of the subscription, were empowered to borrow the same, and impose a tax upon real estate within its limits, not exceeding two per cent on the assessed value of the property. By another act, passed in the same month, the Alabama and Florida Railroad Company was chartered to construct a railroad from some point on Pensacola Bay (the city being the point afterwards selected) northward to the boundary line of Florida and Alabama, and there to connect with another line of road to be constructed from the city of Montgomery, Ala.

Under the act of Jan. 3, 1853, the city of Pensacola subscribed $250,000 to the capital stock of this railroad company, and in payment of the same executed and delivered to the company five hundred bonds of $500 each, payable twenty years after date, with interest at the rate of seven per cent per annum, payable semi-annually on the first days of January and July, at such bank in the city of New York as the treasurer might direct, on the surrender of the coupons for such interest attached to the bonds.

The plaintiff is the holder of sixteen hundred and ninety of these coupons, now past due, and alleges that the city has never made any provision for their payment at any bank in the city of New York, or at any other place ; that, until about the 1st of January, 1871, the city received the coupons in payment of taxes, although the taxes assessed were never sufficient to absorb the coupons as they matured, but that since that time the city has refused, and still refuses, to recognize its obligation to pay them. Several judgments have been recovered by other parties upon coupons of the same kind against the city ; but executions issued thereon have been returned wholly unsatisfied, because the city possessed no property out of which they could be made.

The constitution of Florida, adopted in 1868, provided that the legislature should " establish a uniform system of county, township, and municipal government." In pursuance of this requirement, the legislature, in 1868 and 1869, passed acts " to provide for the incorporation of cities and towns, and to estab-

lish a uniform system of municipal government" in the State. These acts authorized the establishment of a municipal government, with corporate powers and privileges by the voluntary action of the male inhabitants of any hamlet, village, or town in the State, not less than one hundred in number; and also provided for the reorganization of existing municipal corporations under their provisions. Under these acts the charter of the city was surrendered, and attempts were made to reorganize its government; but these attempts failed, because the reorganization was not made within the periods prescribed. In consequence of such failure, and because the acts provided for the cessation of corporate authority in case the reorganization was not effected within the periods designated, the citizens residing within the limits of the city proceeded to establish a municipal government with corporate authority, under the act of 1869, as citizens not having any existing corporation were authorized to do. Such establishment or reorganization of government having been effected, the plaintiff applied to its officers for the payment of the coupons held by him; but the payment was refused, they insisting that they were officers of a new and distinct corporation from the one which issued the bonds and coupons mentioned, and that the present corporation was not responsible for them. The plaintiff thereupon filed the present bill, asking for a decree for the amount of the coupons held by him against the city of Pensacola, and that the city be compelled to levy a tax upon real and personal property within its limits sufficient to satisfy such decree and costs, and for general relief. Upon demurrer, the bill was dismissed; and, on appeal, the case is brought here for our consideration.

The ancient doctrine, that, upon the repeal of a private corporation, its debts were extinguished, and its real property reverted to its grantors, and its personal property vested in the State, has been so far modified by modern adjudications, that a court of equity will now lay hold of the property of a dissolved corporation, and administer it for the benefit of its creditors and stockholders. The obligation of contracts, made whilst the corporation was in existence, survives its dissolution; and the contracts may be enforced by a court of equity, so far as to

subject, for their satisfaction, any property possessed by the corporation at the time.  In the view of equity, its property constitutes a trust fund pledged to the payment of the debts of creditors and stockholders ; and, if a municipal corporation, upon the surrender, or extinction in other ways, of its charter, is possessed of any property, a court of equity will equally take possession of it for the benefit of the creditors of the corporation.  In this case, it is averred in the bill that the city of Pensacola, upon the surrender of its original charter, did not possess any property.

It is not necessary, however, in the view we take of the proceedings for the reorganization of the city government, to consider the effect of an absolute repeal of the charter of a municipal corporation upon its obligations.  It is sufficient that here, in our judgment, there was a continuation of the corporation of Pensacola, with its original rights of property and obligations, not a new and distinct creation of corporate capacity and liability.

The constitution of 1868 only designed to secure uniformity in county, township, and municipal government.  It contemplated no change in existing liabilities.  The acts of 1868 and 1869, passed to carry into effect the constitutional provision, aimed solely to secure this uniformity.  They do not even allude to previous liabilities.  Although a municipal corporation, so far as it is invested with subordinate legislative powers for local-purposes, is a mere instrumentality of the State for the convenient administration of government, yet, when authorized to take stock in a railroad company, and issue its obligations in payment of the stock, it is to that extent to be deemed a private corporation, and its obligations are secured by all the guaranties which protect the engagements of private individuals.  The inhibition of the Constitution, which preserves against the interference of a State the sacredness of contracts, applies to the liabilities of municipal corporations created by its permission ; and although the repeal or modification of the charter of a corporation of that kind is not within the inhibition, yet it will not be admitted, where its legislation is susceptible of another construction, that the State has in this way sanctioned an evasion of or escape from liabilities,

the creation of which it authorized. When, therefore, a new form is given to an old municipal corporation, or such a corporation is reorganized under a new charter, taking in its new organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs; and, in the absence of express provision for their payment otherwise, it will also be presumed in such case that the legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in its reorganization. That such was the intention of the State of Florida in the present case, we have no doubt; to suppose otherwise would be to impute to her an insensibility to the claims of morality and justice, which nothing in her history warrants.

The principle which applies to the State would seem to be applicable to cases of this kind. Obligations contracted by its agents continue against the State, whatever changes may take place in its constitution of government. "The new government," says Wheaton, "succeeds to the fiscal rights, and is bound to fulfil the fiscal obligations, of the former government. It becomes entitled to the public domain and other property of the State, and is bound to pay its debts previously contracted." Inter. Law, 30: So a change in the charter of a municipal corporation, in whole or part, by an amendment of its provisions, or the substitution of a new charter in place of the old one, should not be deemed, in the absence of express legislative declaration otherwise, to affect the identity of the corporation, or to relieve it from its previous liabilities.

In a case recently decided by the Circuit Court of the United States for the Northern District of Florida, *Milner's Administrator* v. *City of Pensacola*, 2 Woods, 632, the effect of the legislation of the State upon the corporate existence of the city of Pensacola was examined. The court held and sustained its conclusion in an able and well-considered opinion, that the reorganization of the city, under the act of 1869, was simply the assumption by the city of the new powers and privileges

which the act conferred, and was not the creation of a new corporation, — a conclusion which accords with our judgment.

It follows, from the views we have expressed, that the remedy of the plaintiff was not by a suit in equity, but by an action at law against the present corporation upon the coupons; and, if judgment be recovered thereon and be not paid, then by *mandamus* upon its officers to compel them to raise the requisite funds for its payment in the manner prescribed by its charter.

   *Decree affirmed, without prejudice to the plaintiff's right to
      proceed at law.*

NOTE. — *Jones* v. *Pensacola*, appeal from the Circuit Court of the United States for the Northern District of Florida, was argued at the same time and by the same counsel as the preceding case.

MR. JUSTICE FIELD delivered the opinion of the court.

This case is similar in all essential particulars to that of *Broughton* v. *Pensacola;* and, upon the authority of the decision therein rendered, the decree is affirmed, without prejudice to the plaintiff's right to proceed at law.