### CORNELL UNIVERSITY v. VILLAGE OF MAUMEE.

(Circuit Court, N. D. Ohio, W. D. May 27, 1895.)

No. 1,168.

MUNICIPAL CORPORATIONS—MISNOMER—BONDS.
  Bonds duly and lawfully issued by a municipal corporation cannot be rendered invalid in the hands of a bona fide holder by the fact that such corporation, though properly a city, has issued such bonds under the name of a village, it having previously been recognized as a village in an act of the legislature changing its name, and having levied and collected taxes, passed ordinances, and otherwise acted as a village.

This was an action by Cornell University against the village of Maumee, Ohio, upon coupons cut from bonds of the village. The case was tried by the court without a jury.

Harris & Thurston and Doyle, Scott & Lewis, for plaintiff.
J. E. Pilliad, L. M. Murphy, and W. H. A. Read, for defendant.

RICKS, District Judge. The village of Maumee, in Lucas county, Ohio, in the year 1888 issued $25,000 of refunding bonds under the

provisions of section 2701 of the Revised Statutes of Ohio, which provides:

"The trustees or council of any municipal corporation, for the purpose of extending the time for the payment of any indebtedness, which, from its limits of taxation, such corporation is unable to pay at maturity, shall have power to issue bonds of such corporation, or borrow money, so as to change but not increase the indebtedness, in such amounts, and for such length of time, and at such rate of interest as the council may deem proper, not to exceed the rate of eight per centum per annum."

Section 2703 provides that:

"All bonds issued under authority of this chapter shall express upon their face the purpose for which they were issued, and under what ordinance."

Section 2706 provides that:

"All bonds, notes or certificates of indebtedness issued by municipal corporations shall be signed by the mayor and by the auditor, comptroller or the clerk thereof, and be sealed with the seal of the corporation."

The bonds so issued passed to the plaintiff as a bona fide holder and innocent purchaser for value. The suit is brought upon the coupons, and in order to determine the validity of the bonds issued. The defense interposed is substantially that no such municipal corporation as the village of Maumee ever existed; that for years prior to this Maumee City was created a city, and continued to be such until the adoption of the new constitution, when, under the legislation as to municipal corporations, it was placed in the second grade of cities as a city of the second class. It appears from the several acts of the legislature, beginning with 1838, that the incorporation sued was known as Maumee City, in the county of Lucas, and subsequently known as the city of South Toledo. In 72 Ohio Laws, 252, the general assembly passed the following act:

"An act to change the name of Maumee City, Lucas county. Section 1. Be it enacted by the general assembly of the state of Ohio, that Maumee City, Lucas county, shall hereafter be designated and known by the name of South Toledo. Sec. 2. This act shall take effect and be in force from and after its passage."

On March 4, 1887 (84 Ohio Laws, 309), the general assembly passed the following act:

"An act to change the name of the incorporated village of South Toledo. Section 1. Be it enacted by the general assembly of the state of Ohio, that the name of the incorporated village of South Toledo, Lucas county, Ohio, be and the same is hereby changed to Maumee, provided, that such change shall in no wise affect the rights or liabilities of such village. Sec. 2. This act shall take effect and be in force from and after its passage."

Whatever may have been the facts concerning the name by which the territory was known as a corporation, the people within the territorial boundaries of that corporation remained the same. Section 1571a of the Revised Statutes of Ohio (Smith & B. Ed., p. 403) provides that:

"No error, irregularity or defect in any proceeding for the creation of a municipal corporation shall render it invalid if the territory sought to be incorporated has been recognized as such corporation and any tax levied upon it as such has been paid, or it has been subjected to the authority of the council without objection from its inhabitants."

The legislature has called this incorporation a village in the act authorizing a change of name; the supreme court has called it a village. It bought a corporate seal as a village; it issued bonds as a village; it levied and collected taxes as a village; it passed ordinances by its village council without objection; it is the same municipality, and includes within its boundaries the same people who received the money as the proceeds of the sale of these bonds. It would be grossly inequitable, and a clear violation of all legal principles, to permit these people now to escape the payment of this honest debt because of this alleged defect in its proper corporate name.

The bonds are executed by the mayor and village clerk, and the seal of the village is attached to them. They refer to the ordinance of the village council under which they were issued, and state the purpose of their issue in the following recitals:

"This bond is one of a series of bonds of like date and tenor, issued for the purpose of procuring the necessary means to refund and extend the time of payment of certain outstanding indebtedness, which is now due, and from its limits of taxation said village is unable to pay at maturity. This bond is issued and executed under and by authority of and in accordance with chapter 2, § 2701 of the Revised Statutes of the state of Ohio, and all other laws on the subject. Also by virtue of an ordinance passed by the village council August 16th, 1888. And it is hereby certified and recited that all acts, conditions, and things required to be done, precedent to and in the issuing of said bonds, have been properly done, happened, and performed in regular and due form, as required by law."

The ordinance of the village council passed August 16, 1888, referred to in the bond, provides substantially as follows: Section 1: "That for the purpose of extending the time of payment of so much of its existing indebtedness now due and soon to become due as said village is unable, from its limits of taxation, to pay at maturity, there be issued the bonds of said village in the sum of $25,000, as hereinafter provided." Section 2 describes the bonds, and the form of their execution. Section 3 authorizes and directs the mayor and clerk of the village, as soon as practicable, to prepare and execute said bonds; and provides that the proceeds thereof, when the bonds shall have been disposed of according to law, "shall be used and applied, under the direction of the council, for the sole purpose of paying for and removing and extending said maturing and matured indebtedness of said village." By the certificate of the village clerk of Maumee, dated September 1, 1888, it appears that the total indebtedness of Maumee at that time was $40,000. There is no defect claimed in the advertisement, or the proceedings authorizing the issuance of these bonds, and no claim that they sold for less than par. There was a general statute authorizing the village to issue the bonds. It is therefore a case where the power of the municipality to create the indebtedness is indisputable. The village council had a right to make the recitals stated in the bonds, and there is now no right to contradict them.

In the case of State v. Village of Perrysburg, 14 Ohio St. 487, which seems to me conclusive of this case, the supreme court say:

"Again, it is urged in behalf of the defendant that these bonds were issued in the name of the 'town' of Perrysburg,—the name of the corporation prior to the taking effect of the general act for the organization of cities and incorporated villages,—instead of in the name of 'the incorporated village of Perrysburg,' which, under the operation of that act, was its true legal designation at the time the vote was taken, the subscription of stock made, and the bonds were issued. But this was a mere misnomer, and amounts to nothing. See Turnpike Co. v. Brush, 10 Ohio 111, and Ang. & A. Corp. § 99."

The legislative recognition of a county illegally and fraudulently organized gives validity to its acts and dealings with third persons. Commissioners v. Rose, 140 U. S. 71, 11 Sup. Ct. 710. The question of corporate existence cannot be raised in a private litigation by the body assuming to be a corporation, to the prejudice of rights acquired as against such assumed corporation while corporate powers were being assumed and exercised. Ashley v. Board, 8 C. C. A. 455, 60 Fed. 55. In that case the circuit court of appeals held that the question of the legal existence of the county could not be raised in a private litigation, as appears from the language of the first paragraph of the syllabus. The court say:

"But it is needless to multiply authorities. They are substantially, if not altogether, agreed upon the proposition that when a municipal body has assumed, under color of authority, and exercised for any considerable period of time, with the consent of the state, the powers of a public corporation of the kind recognized by the organic law, neither the corporation nor any private party can, in private litigation, question the legality of its existence."

I conclude, therefore, that, the legal authority or power having been conferred upon this municipality by the General Laws of Ohio to issue such bonds, the conditions prescribed by the statute upon which such bonds were issued having existed as recited on the face of the bonds, said municipality is bound by the acts and representations of its council and other officials as against a bona fide holder,—which the plaintiff has shown itself to be,—and therefore that a judgment should be entered for the amount claimed in the petition.