Marshall, C. J.
 

 This cause invokes the original jurisdiction of this court in
 
 quo warranto
 
 and grows out of the following facts: By the census of 1920, Garfield Heights had a population of less than 5,000 and was therefore a village. By the federal census of 1930 it was shown to have an official population of 15,589, and had therefore sufficient population to cause it to be a city. On December 1, 1930, the secretary of state of Ohio, by virtue of Section 3498, General Code, issued a proclamation stating the 1930 population, and filed the same with the mayor of Garfield Heights. That section, in addition to providing for the proclamation, contains the further provision: “Prom and after thirty days after the issuance of such proclamation each municipal corporation shall be a city or village, in accordance with the provisions of this title.” Under the Municipal Code enacted in 1902 the government of a village is different in many important respects from the government of a city. One point of difference is that Section 10, Article XY of the Constitution, adopted in 1912, provides as follows: “Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.”
 

 It will be seen that the civil service provisions apply to cities, but do not apply to villages. As required by that provision of the Constitution, the Legislature did enact laws, among others one that provided for civil service commissions for cities. In Section 486-19,
 
 *89
 
 General Code, it was provided: “The mayor or other chief appointing authority of each city in the state shall appoint three persons, one for a term of two years, one for four years, and one for six years, who shall constitute the municipal civil service commission of such city and of the city school district in which such city is located * * *.”
 

 On March 15, 1931, the mayor of Garfield Heights, who had been elected as a village mayor, without waiting until the first election under the city government, proceeded to appoint the respondents as members of a civil service commission for the city of Garfield Heights. Said respondents accepted and qualified as such. On January 5,1932, shortly after the election of a. new mayor of Garfield Heights, said new mayor appointed relators as members of the civil service commission of Garfield Heights. The relators therefore pray that the court inquire into the title of the respondents to said office, that judgment of ouster be pronounced against them, and that said relators be adjudged entitled to said office and its franchise.
 

 The legal question is, therefore, did Mayor Ring, who appointed the respondents, have the power to act as a city mayor after January 1, 1931, he having been elected as a village mayor at] the November election of 1929, when Garfield Heights was admittedly a village?
 

 In addition to that portion of Section 3498, General Code, already quoted, this controversy more particularly turns upon the provisions of Section 3499: “Officers of a village advanced to a city, or of a city reduced to a village, shall continue in office until succeeded by the proper officers of the new corporation at the next regular election, and the ordinances thereof not inconsistent with the laws relating to the new corporation shall continue in force until changed or repealed.”
 

 It is clear that the village officers remained in office until succeeded by the city officers on January 1,1932.
 
 *90
 
 The question before this court is as to whether they possessed only the powers and could perform only the functions of village officers, or whether they were, by virtue of Sections 3498 and 3499, immediately invested by the proclamation of the secretary of state, or thirty days thereafter, with the powers, duties, and official functions of city officers.
 

 These statutes were enacted in 1902 (96 Ohio Laws, 20), under authority of Section 6 of Article XIII of the Constitution: “The General Assembly shall provide for the organization of cities, and incorporated villages, by general laws; and restrict their power of taxation, assessment, borrowing money, contracting debts and loaning their credit, so as to prevent the abuse of such power.” It will be seen that the constitutional warrant was in almost unlimited terms, giving the General Assembly a free hand in providing for transition from a village form of government to city form, or
 
 vice
 
 versa. The constitutional amendment of 1912 is essentially different. Section 1 of Article XVIII provides: “Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law.” There has been no change in the Code of 1902 since the new constitutional provision has been adopted. We must therefore utilize the law as it is, though of course we are privileged to interpret it in the light of the restricted authority of the constitutional amendment. Manifestly the General Assembly has nothing to do with establishing distinctions between cities and villages, and the only test of whether a municipality is the one or the other is whether it has a population of more or less than 5,000. Upon the population of any municipality advancing beyond or receding below the 5,000 limitation of population, it automatically changes from the one status to the
 
 *91
 
 other. The only political difference which can exist between a city and a village is that the form of government be made different. The distinctions of form are matters of legislative cognizance and haye in fact been provided. If nothing further appeared in the constitutional provision, it would follow that immediately upon the necessary increase or decrease in population the changed forms would become effective. The constitutional framers, however, did place a limitation by providing:
 
 1 ‘
 
 The method of transition from one class to the other shall be regulated by law.” Without resorting to technical definitions as given by lexicographers, transition may be declared to be a change from one status to another, and in this particular instance means change from a village status to a city status, or
 
 vice versa.
 
 Method means mode of procedure. The constitutional provisions are not self-executing, because the method of transition has been expressly delegated to the General Assembly. The Constitution does not expressly provide the manner of determining the population, and that very fact has-heretofore made it necessary for this court to make a declaration. In
 
 Murray
 
 v.
 
 State, ex rel. Nestor,
 
 91 Ohio St., 220, 110 N. E., 471, 473, Ann. Cas., 1916D, 864, the question before this court was whether an official census taken by the city of East Youngstown might be used to determine the basis for ascertainment of the number of saloon licenses which might be issued in that municipality. This court declared in the opinion that that was an official census, but nevertheless ruled that, under Section 3498, General Code, the provision therein made, requiring the population to be ascertained by the official federal census, controlled. That decision was rendered after the new constitutional provision had gone into effect. In the opinion, it is said: “The manner of the assignment of the different municipalities to the classes to which they belong they left to be regulated by law.” And again:
 
 *92
 
 “The method of transition, we think, has reference to the time as well as the manner of transition.” In the syllabus it is stated that Section 3498, providing that the federal census must determine the population, is not inconsistent with the constitutional provision, and that a village does not advance to the city status when the increase in population is only made to appear by an official census taken by the municipality. Inasmuch as the constitutional provision is not full and complete, and this court has in that decision ■ determined the time-of the transition to be subject to statute we see no objection to following the syllabus in that case, so far as it is applicable to the instant case. It cannot in any event be an authority concerning the. powers and duties of the officials who were ■ elected' under the village government. We are concerned in the instant case only with “the method of transition.” We are of the opinion that the constitutional framers, in the use of that expression, only meant that it was within the power of the General Assembly to provide one form of government, with its resultant officers, each with defined duties for a village government, and; a different form with different officers with different duties for a city government. It is impossible to conceive of a government without officers, and equally impossible to conceive of officers without their duties being defined. It is indisputable that public officers have only such authority as the law confers upon them, and that they, must proceed in the exercise of that authority in the manner prescribed by law. It has been so' held in numerous cases. True, an officer in the exercise of express powers has such implied powers as are necessary, for the due and efficient exercise of powers expressly granted. But power will not be implied beyond the necessities of the case. While not parallel in their facts, this is the spirit of the cases of
 
 Buchanan Bridge Co.
 
 v.
 
 Campbell et
 
 al.,
 
 Commrs.,
 
 60
 
 *93
 
 Ohio St., 406, 54 N. E., 372, and
 
 City of Wellston
 
 v.
 
 Morgan,
 
 65 Ohio St., 219, 62 N. E., 127.
 

 We have examined the case of
 
 Wise
 
 v.
 
 City of Barberton,
 
 88 Ohio St., 595, 106 N. E., 1086. That case merely affirmed without opinion a decision of the Circuit Court reported in 20 C. C. (N. S.), 390, 31 C. D., 373. While that case merely decided the question of the veto power of a mayor of a municipality which had been advanced from the village to a city, the reasoning of the opinion in that case in the court of appeals would lead to a denial of the writ in the instant case. The mere affirmance of the Circuit Court, by this court, did not make authoritative the Circuit Court opinion. The inconveniences, not to say the impossible situations which would necessarily arise in following that authority, are well described by counsel for relator, and they are so concisely stated that they are adopted in toto:
 

 “The official personnel of a village is very different, and much more simple, than in case of a city. The elected officials of a village consist of a mayor (Section 4255), clerk (Section 4279), treasurer (Section 4293), marshal (Section 4384), a board of trustees of public affairs (Section 4358), and a council of six members elected at large (Section 4215). The appointment of a street commissioner is required (Section 4363), and there is provision for the employment of legal counsel (Section 4220), and of a village engineer (Section 4364).
 

 “The elected officials of a city consist of a mayor (Section 4249), president of council (Section 4272), auditor (Section 4275), treasurer (Section 4293), solicitor (Section 4303), and a council of not less than seven members, four of whom shall be elected by wards (Section 4206). The appointive officials of a city are a director of public service (Section 4323), a director of public safety (Section 4367), a board of health (Section 4404), a civil service commission (Sec
 
 *94
 
 tion 486-19), — and various other subdepartment officials which are not provided for in villages.
 

 ‘ ‘ The mayor of a village is the president of the council and may vote in case of a tie (Section 4255). The mayor of a city has no such authority but does have the veto power (Section 4234), which the mayor of a village does not have. Under the provisions of Sections 3498 and 3499 the village mayor continues to serve until the end of his elected term. Does he continue as president of the council? Does he continue to have a vote in case of a tie? Does he have the veto power?
 

 “The auditor in a city is the fiscal officer (Section 4276). In a village, the clerk is the fiscal officer and also clerk of the council (Sections 4279 and 4280). Does he continue to exercise this dual function?
 

 “In a village, the marshal, under the mayor, is the executive head of the police force (Section 4384), while in a city the director of public safety,
 
 appointed by the mayor,
 
 is such executive head (Section 4368), with the chief of police in immediate charge of the department (Section 4372). Does the marshal become the director of public safety, and if so, does he become vested with the other powers of the director? Or does he become chief of police, and if so, is a director of public safety to be added to the official roster?
 

 “In a village the street commissioner is required to supervise the public works (Section 4364), while in a city these functions devolve upon the director of public service (Sections 4235 and 4236 [4325 and 4326]). The street commissioner serves to. the end of his appointed term. As street commissioner? Or as director of public service? And, if the latter, is he vested with the additional powers and duties provided for the director under the city code? Or is a director of public service to be added? And if so, what becomes of the street commissioner?
 

 “The legal counsel in a village is merely an employe
 
 *95
 
 of the village, without any independent authority. The solicitor in a city has specific independent authority (Sections 4305
 
 et seq.).
 
 Does the village
 
 legal counsel
 
 automatically become the
 
 city solicitor,
 
 vested with the latter’s authority? And if not, how is a solicitor to be provided in the interim?
 

 “Each village is a component part of the county health district (Section 1261-16), while each city comprises an independent city health district (ib.). The villages, as such, exercise no health functions. Do they become separate health districts thirty days after the census proclamation?
 

 “In cities, the powers of the council are legislative only (Section 4211), and contracts, particularly in the fire and police departments, are awarded and executed by the directors of the respective departments (Sections 4328, 4331 and 4371), except that contracts involving Five Hundred Dollars ($500.00) or more must have the approval of the board of control, consisting of the mayor and the two directors (Section 4403). In villages, contracts are authorized and awarded by the council (Sections 4221 and 4223), with purely formal execution by the mayor and clerk (Section 4221). From and after thirty days after the proclamation of the census,
 
 who authorises and executes contracts f”
 

 The Legislature clearly had the right to provide for the method of transition; that is to say, the code of procedure by which the village government should end and the city government begin. It could have expressly provided that, from the time of the filing of the proclamation of the secretary of state in the office of the mayor, the village officers then in office might immediately begin to exercise powers of corresponding city officers. What the Legislature in fact did was to continue the village officers in office until succeeded by the proper officers of the new corporation at the next regular election. The village officers were elected because of their presumed qualifications to dis
 
 *96
 
 charge the duties devolving upon those officers respectively. Applying the rule of strict construction, they should not be held to be empowered to discharge other duties essentially different, without specific legislative ■authority therefor, on the sole theory that such powers are implied because of the failure of the Legislature to make them express. The analysis of the implications made necessary by immediately regarding the city government to be in effect, with the village officers exercising undefined powers, could only be justified upon the maxim that “necessity knows no law.” If, on the other hand, the mandate of the Legislature be followed only to the extent that the officers continue in office until the next regular election, without giving them any implied powers whatever, but limiting them strictly to those expressly conferred, the transition from one form of government to the other is made without difficulty and without inconvenience. It must therefore be presumed that such was the legislative intent.
 

 The writ will be allowed and relators will be awarded judgment of ouster.
 

 Writ allowed.
 

 Matthias, Allen, Kinkade and Stephenson, JJ., concur.