CITY OF OAKWOOD, OHIO, v. HARTFORD ACCIDENT & INDEMNITY CO.

No. 6878.

Circuit Court of Appeals, Sixth Circuit.

Feb. 14, 1936.

Dean Schnacke, of Dayton, Ohio (William M. Matthews and Craighead, Cowden, Smith & Schnacke, all of Dayton, Ohio, on the brief), for appellant.

Murray Seasongood and Lester A. Jaffe, both of Cincinnati, Ohio (John B. Harshman, of Dayton, Ohio, Paxton & Seasongood, of Cincinnati, Ohio, and Pickrel, Schaeffer, Harshman & Young, of Dayton, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Action by the City of Oakwood on a surety bond covering its public funds on deposit in the Union Trust Company of Dayton, Ohio, at the time of the bank's failure. On written waiver of jury trial the case was tried to the court, which rendered judgment against the city. The material facts are not in dispute, and the questions properly saved arise from assignments of error directed to the court's conclusions of law.

In accordance with statute, the Village of Oakwood designated The City National Bank and Trust Company of Dayton as its official depository, and appellee surety company on January 2, 1930, issued its depository bond in the sum of $75,000, securing public funds of the Village of Oakwood. The Union Trust Company of Dayton was later substituted as principal on the bond.

The federal census of 1930 determined that the Village of Oakwood had a population of more than five thousand, and in accordance with article XVIII, section 1,[1] of the Ohio Constitution, and section 3497[2] et seq., General Code of Ohio, the Secretary of State issued a proclamation whereby the Village of Oakwood became the City of Oakwood, effective January 1, 1931. On January 6, 1931, the appellee executed and delivered a continuation certificate of the original depository bond, effective for one year commencing January 3, 1931, designating the municipal corporation as the Village of Oakwood. The premium therefor was paid by the bank.

The change in classification resulted in no territorial or boundary changes, and in no changes in inhabitants. There was no alteration in the employee personnel of the municipality or in its officers. While change of status had been initiated, it had not yet been completed, and there was therefore no immediate change in the form of government. Under section 3499, General Code of Ohio,[3] the village ordinances not inconsistent with the laws relating to the new corporation were maintained in force, and the change in officers did not take effect until January 1, 1932. The hold-over officers who served during 1931 had the powers only of village officers. State ex rel. Heffernan v. Serp, 125 Ohio St. 87, 180 N.E. 650 (3d syl.).

When the bank failed, the City of Oakwood demanded payment of its deposit of $77,074.58, which was refused. The city then filed claim for the full amount with the Superintendent of Banks, who rejected it. . The bank had pledged $10,000 of United States Liberty Bonds as additional security for the deposit. The City of Oakwood sold the Liberty Bonds without notice to the appellee. The Superintendent of Banks credited the proceeds and allowed the claim for $67,074.-58. A dividend of fifty per cent. was paid on this amount. In an action later filed in the state court to compel the Superintendent to allow the full claim of

[1] Article XVIII, Sec. 1. Municipal corporations are hereby classified into cities and villages. All such corporations having a population of five thousand or over shall be cities; all others shall be villages. The method of transition from one class to the other shall be regulated by law.

[2] Sec. 3497. Municipal corporations, which, at the last federal census, had a population of five thousand or more, shall be cities. All other municipal corporations shall be villages. Cities which, at any future federal census, have a population of less than five thousand shall become villages. Villages which, at any future federal census, have a population of five thousand or more, shall become cities.

[3] Sec. 3499. Officers of a village advanced to a city, or of a city reduced to a village, shall continue in office until succeeded by the proper officers of the new corporation at the next regular election, and the ordinances thereof not inconsistent with the laws relating to the new corporation shall continue in force until changed or repealed.

$77,074.58, the state courts held against the city.

In the instant case the District Court dismissed appellant's petition and entered final judgment in favor of the appellee upon the ground that the City of Oakwood is a different legal entity from the Village of Oakwood; that the City of Oakwood is not the obligee named in the bond, the rider, or the continuation certificate, that the appellee as surety did not contract with the City of Oakwood, and that reformation of the bond had not been sought. These conclusions were based mainly upon the erroneous theory that the Supreme Court of Ohio had decided these questions in State ex rel. Heffernan v. Serp, supra. If that case had decided that the city, by virtue of the change of classification became a new corporation, the principal legal question would still be open, for mere change in the corporate form of a political entity does not constitute change in identity. We disagree, however, with the District Court's view of the decision. It is based upon statements in the opinion, while in Ohio the law of the case is declared only in the syllabus, read in the light of the facts of the case. Rule 6, Supreme Court of Ohio; 11 Ohio Jurisprudence, 796. The question there involved related only to the powers of the officers of a village which had acquired city status. The specific holding of the court was that the holdover mayor had only the powers and duties of a village officer. Under this decision, when the Village of Oakwood became a city, it still had to function through village officers, invested with the restricted powers of such officers, for almost a year after the continuation certificate securing the funds "of the village of Oakwood" was executed. State ex rel. Heffernan v. Serp, supra, so far from being an authority in favor of the appellee, supports the proposition that the village and the city, at the time the continuation certificate was executed, were substantially identical, and that the transition was only a change in status.

Previous decisions of the Ohio Supreme Court had held that a change in the classification and organization of municipal corporations did not affect their corporate identity. State ex rel. Fosdick v. Mayor, etc., of Village of Perrysburg, 14 Ohio St. 472, 473; Electric Street R. Co. v. Hamlet of North Bend, 70 Ohio St. 46, 70 N.E. 949.

These decisions support appellant's position, for they hold that mere change in political form does not destroy substantial identity of municipal corporations if territory and boundaries are unchanged. The 1912 amendments to the Ohio Constitution which enacted sweeping changes in municipal powers did not repeal this rule. Article XVIII, § 1, recognizes both cities and villages as municipal corporations. The larger powers of the village and the city are identical. "Municipalities," that is cities or villages, have "authority to exercise all powers of local self-government." Article XVIII, § 3. "Any municipality may frame * * * a charter for its government." Article XVIII, § 7. "Any municipality may acquire, construct, own, lease and operate * * * any public utility." Article XVIII, § 4. Section 1 of article XVIII recognizes the continued life of municipalities and provides for a change in classification based upon the one element of increase or decrease in population. This change is called a "transition," that is, a change of status. Neither the Constitution nor the Ohio statutes relating to this transition provide for the destruction of an existing municipal corporation. No decision of the Ohio Supreme Court has declared that a village raised to city status thereby loses its identity. Logically, the reasoning of State ex rel. Fosdick v. Mayor, etc., of Village of Perrysburg, supra, applies. When the boundaries and the territory are the same, only the powers and privileges of the municipalities being somewhat restricted or enlarged, the corporate identity is not substantially affected.

This is in accord with the general rule. A municipal corporation is not dissolved nor is its identity affected by transition from a hamlet, village or town to a city, or vice versa, or passing from one class or grade to another. 1 McQuillin on Municipal Corporations (2d Ed.) 790.

In Broughton v. Pensacola, 93 U.S. 266, 270, 23 L.Ed. 896, the United States Supreme Court declared that when a new form is given to an old municipal corporation, or such corporation is reorganized under a new charter, taking in its new organization the place of the old one, embracing substantially the same incorporators and the same territory, it will be presumed that the Legislature intended a continued existence of the same corporation, although different powers are

possessed under the new charter and different officers administer its affairs. In the absence of express provision for their payment otherwise, it will also be presumed in such case that the Legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in the reorganization. To the same effect are Mobile v. Watson, 116 U.S. 289, 300, 301, 6 S.Ct. 398, 29 L.Ed. 620; Mobile Transportation Co. v. Mobile, 128 Ala. 335, 30 So. 645, 64 L.R.A. 333, 86 Am.St.Rep. 143, affirmed by the Supreme Court, 187 U.S. 479, 23 S.Ct. 170, 47 L.Ed. 266; Carroll v. Fullerton, 215 Ky. 558, 286 S.W. 847. See, also, Cornell University v. Village of Maumee (C.C.) 68 F. 418. In Comanche County v. Lewis, 133 U.S. 198, 10 S.Ct. 286, 33 L.Ed. 604, the Supreme Court applied the same doctrine to the county, and held that Comanche County was the same as it had been prior to the new organization of 1885. Cf. Shapleigh v. City of San Angelo, 167 U.S. 646, 17 S.Ct. 957, 42 L.Ed. 310; City of Maysville v. Shultz, 3 Dana (33 Ky.) 10; City of Olney v. Harvey, 50 Ill. 453, 99 Am.Dec. 530; West v. City of Columbus, 20 Kan. 633.

In Vilas v. City of Manila, 220 U.S. 345, 31 S.Ct. 416, 55 L.Ed. 491, it was claimed that corporate identity and liability were extinguished by a change in sovereignty which resulted in the granting of a new charter. The court (220 U.S. 345), at page 360 (31 S.Ct. 416, 420, 55 L.Ed. 491), says: "The inhabitants of the old city are the incorporators of the new. There is substantially identity of area. There are some changes in the form of government and some changes in corporate powers and methods of administration. The new corporation is endowed with all of the property and property rights of the old," and concludes that in law the present city is in every legal sense the successor of the old, entitled to the property and property rights of the predecessor corporation and subject to all of its liabilities.

Appellee urges that these decisions do not aid the city because they enforced liabilities against, and not property rights belonging to municipal corporations. The decisions state that in case of change in classification or organization the new corporation has the property rights as well as the liabilities of the old. Broughton

v. Pensacola, supra, 93 U.S. 266, 269, 23 L.Ed. 896; Vilas v. City of Manila, supra, 220 U.S. 345, 352, 31 S.Ct. 416, 55 L.Ed. 491. That this is true as to certain aspects of this case seems to be conceded. It is not even suggested that this deposit which belonged to the village did not, when the bank failed, belong to the city.

The change of status made by the Village of Oakwood when it became a city did not deprive it of its identity. Since it had the same boundaries, the same territory, and substantially the same population, it was substantially the same municipal corporation, although it had added powers. Therefore it was the obligee named in the bond, the surety contracted with the city in the continuation certificate and is liable on the bond. The hazard of the surety contract was precisely identical before and after the change of status; it depended on the solvency of the bank. The appellee recognized this fact in its charges. There was no difference in the premium covering the deposit of a village and that covering the deposit of a city in the same bank. The surety knew at the time it wrote the bond for the Village of Oakwood that under Ohio law when the village acquired a population of 5,000 it would automatically have its classification changed to a city, with such changes in officers, their powers and duties, as the laws of Ohio relating to cities would require. If therefore the surety contemplated that such change was material, either as affecting the hazard or for any other reason, it could have protected itself against such change by an appropriate provision in the bond.

In its original petition, appellant alleged misnomer, stating that the continuation certificate "designated the plaintiff (appellant) under its former title of the village of Oakwood, whereas it should have been designated as the city of Oakwood." The clause "whereas it should have been designated as the city of Oakwood" was stricken out over appellant's exception. As the village and the city were substantially identical, the remedy of the appellant was not necessarily as claimed by appellee, reformation of the contract. The case was one of mere misnomer, and appellant could bring an action at law against the surety on the

bond. Broughton v. Pensacola, supra, 93 U.S. 266, 271, 23 L.Ed. 896; State ex rel. Fosdick v. Mayor, etc., of Village of Perrysburg, supra.

The appellee also claimed that by the sale of $10,000 of Liberty Bonds without its knowledge and consent, and the filing of the claim for the reduced amount, it was released pro tanto, urging that otherwise the fifty per cent. dividend would have been payable on $77,074.58 instead of on $67,074.58, and that hence the recovery, if allowed, should be diminished by $5,000.

This defense has greater merit. The pledge of the Liberty Bonds was made by the bank under the provisions of section 4295, General Code of Ohio.[4] These bonds were additional security for the entire deposit. The obligee was entitled to receive a dividend upon the full amount of this claim without deducting the value of the collateral. Merrill v. National Bank of Jacksonville, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640; Aldrich v. Chemical National Bank, 176 U.S. 618, 638, 20 S.Ct. 498, 44 L.Ed. 611; Chemical National Bank v. Armstrong, 59 F. 372, 28 L.R.A. 231 (C.C.A.6).

The obligee was also under obligation to the surety to preserve the security for the surety's benefit. Stearns on Suretyship (3d Ed.) § 252. The collateral was sold within three days after the bank closed, without the knowledge and consent of the surety. Since the collateral was security for every part of the debt, and not merely for that part which exceeded $68,181.81, judgment should have been rendered against the surety for the difference between its liability on the bond and that portion of the deposit for which the city was compensated either by sale of collateral or by dividends already received in liquidation of the bank.

The judgment of the District Court is reversed.

4 Sec. 4295 (112 Ohio Laws 195 at 196). The council may provide by ordinance for the deposit of all public moneys * * * in such bank or banks, situated within the municipality or county, as offer, at competitive bidding, the highest rate of interest and give a good and sufficient bond issued by a surety company authorized to do business in the state, or furnish good and sufficient surety, or secure said moneys by a deposit of bonds or other interest bearing obligations of the United States * * * said security to be subject to the approval of the proper municipal officers, in a sum not less than ten per cent in excess of the maximum amount at any time to be deposited.