Bradford *v.* Cary.

---

## BRADFORD *vs.* CARY.

The legislature having incorporated certain persons "with their families"
into a religious society, it was held that the minor sons, as members of the
father's family, became members of the corporation; and continued such
after arriving at full age, until they changed their membership in some
mode provided by statute.

THIS was an action of the case against the defendant, who being
the presiding officer at a meeting of the first parish in *Turner*, refus-
ed to receive the plaintiff's vote, on the ground that he was not a
member of that parish.

It was agreed, in a case stated by the parties, that the town of
*Turner*, in which the plaintiff was born, and had always dwelt, was
incorporated in 1786; that in 1792 a poll-parish was incorporated,
composed of citizens of that town and of *Buckfield*; after which the
congregational society in *Turner* took the name of the first parish,
and ever since continued to act as a territorial parish. In 1805 a

number of persons *with their families,* were incorporated into a reli-gious society, by the name of the Universalist-society in *Turner.* Of these, *Chandler Bradford* the plaintiff's father, was one; the plain-tiff being then a member of his family, seventeen years old; and he continued to dwell with his father about ten years more. In the years 1809, 1810 and 1811, the plaintiff was taxed as a member of the first parish; which taxes he paid; after which none were assess-ed by that parish; their funds, when wanted, being raised in some other manner. In 1818 and 1819 certain individuals of the first parish built a new meeting house, and sold most of the pews, of which the plaintiff purchased one, which he occasionally occupied, when there was no religious service in the universalists' society. He contributed, from time to time, to the support of an occasional preacher, in the latter society, where he usually attended public wor-ship; and purchased a pew in the universalists' meeting house; but he paid nothing to the first parish, nor to the support of its minister, except the taxes before mentioned. He had not acted in any par-ish meeting for the last twelve years, nor did it appear that he had ever voted in any parish meeting whatever. He professed himself a believer in the doctrines of the universalists.

Upon these facts, among others having no relation to the point upon which the cause was decided, the question of the plaintiff's member-ship, and consequent right to vote, in the first parish, was submitted to the decision of the court.

*N. Emery,* for the plaintiff. The act of *Feb.* 16, 1805, incorpo-rating certain persons with their families and estates into the univer-salists' society in *Turner,* did not work a perpetual restriction on those who were minors, so as to deprive them of their election, when of age, to become members of the first parish. *Lord v. Chamber-lain* 2. *Greenl.* 67. The corporate right belonged only to the per-sons named in the statute; and it died with the person. The word " families" is used with the intent that the polls of males, as they ar-rived to the age of eighteen, might be taxed, with the estates, to the father. It could never have meant that the sons should be regarded as corporators, on arriving at full age, without some act of their own,

Bradford *v.* Cary.

signifying such intention. . Such a construction would not be in keeping with the law or the subject of contracts by minors, which at least require ratification, on their coming of age.

By the terms of that act, all who wished to leave or join the society, must do this within a year from the passage of the statute. Here is an election given to some members, but virtually refused to all who were not of age at the end of the year, and thus capable of making an election, if infants were members. So great an injustice and absurdity could not have been intended by the legislature.

But there is nothing in the case, showing that the plaintiff's father ever accepted the act of incorporation. The act itself is not conclusive evidence of this fact. And unless this is established, the defence fails *in limine.*

None of the plaintiff's proceedings in occasionally attending the religious meetings of the universalists, contributing to the pay of their teachers, purchasing a pew in their meeting house, professing their faith, and not attending the meetings of the first parish, prove that he was not a member of the latter. The members of a parish may all change their speculative belief, and yet retain their rights. *Shapleigh v. Gilman* 13. *Mass.* 190. *Const. Maine, art.* 1. *sec.* 3.

On the other hand, the first parish is estopped to deny that he is one of its members, having taxed him as such, with his assent, in three successive years, since he came of age ; and one of these having been the last tax ever assessed. *Sparrow v. Wood* 16. *Mass.* 457.

*Greenleaf* and *Fessenden* for the defendant, maintained the following positions—

1. No person can be a member of two parishes or religious societies at the same time ; as it is to be inferred from *Stat.* 1811. *ch.* 6. and *Stat.* 1821. *ch.* 135. See also *Sutton v. Cole* 8. *Mass.* 96. *Minot v. Curtis* 7. *Mass.* 441. *Brunswick v. Dunning ib.* 445. *Jewett v. Burroughs* 15. *Mass.* 464. *Lord v. Chamberlain* 2. *Greenl.* 67.

2. The plaintiff became a member of the universalists' society by the act of incorporation in 1805. The legislature had the same right to constitute him such, though a minor, as had to have made him a member of a municipal corporation ; which latter right is under-

stood to be conceded. And this membership he ratified after coming of age.

3. And it has never been lost, nor waived, nor any new parochial rights acquired. After one year from the date of the incorporation, his membership could not be changed but by the legislature, till the passage of *Stat.* 1811. *ch.* 6, which prescribed a particular mode of changing parochial membership; but of this the plaintiff has never availed himself. Since the *Stat.* 1821. *ch.* 135, he could not become a member of the first parish without its consent, of which the case affords no evidence.

His being taxed did not constitute him a member, unless he was liable to taxation.. It could not be even *prima facie* evidence, except in an ancient transaction, and in the absence of opposing proof. An erroneous assessment, transcending the legal powers of the assessors, might subject them to an action, but could give the party no rights against the parish. The right to vote depends on the liability to be taxed. *Stat.* 1786. *ch.* 10. *Stat.* 1817. *ch.* 184. *Montague v. Dedham* 4. *Mass.* 269. *Sanger v. Roxbury* 8. *Mass.* 265. *Sparrow v. Wood* 16. *Mass.* 457.

These arguments having been made in writing, in the last vacation, the opinion of the court was now delivered by

WESTON J. The question presented for our determination is, whether the plaintiff, at the time his vote was refused by the defendant, was or was not a member of the first parish in *Turner*. This will depend upon the question, whether he ever became a member of the universalists' society in that town, and whether if so, his connexion with that society had ceased, by his return to, and becoming a member of, the first parish.

Counties, towns, and parishes, whether poll or territorial, are corporations instituted for public purposes, civil and ecclesiastical; and have ever been considered as subject to be arranged and modified by the legislative power, at its pleasure. Legislative authority to this extent, is not controverted in the case of *Dartmouth College* 4. *Wheat.* 518. It operates upon persons of full age, without their choice or election; and sometimes against their will. There is no

Bradford *v.* Cary.

objection then to its being extended to minors. It was so in fact in territorial, and might be in poll, parishes, if the legislature deemed it expedient thus to prescribe. Indeed they might incorporate a parish, to consist of certain persons named, and their children, from generation to generation, residing, as convenience might require, within certain limits. Their minor children, and such as might afterwards be born, would find themselves in no other condition, than that which is common to all native citizens of Massachusetts, every one of whom is born connected with some religious society. The rights of conscience, and the collateral right of having his ministerial taxes ultimately appropriated to the support of a religious teacher of his choice, upon whose instructions he attends, were secured in that Commonwealth by the constitution. Why then may we not consider all the members of *Chandler Bradford's* family as created members of the universalists' society? Unless this was intended, why use the term family at all? There is no analogy between this case and those provided by the pauper laws, where derivative settlements are necessary to prevent a separation between husband and wife, and between parents and their minor children. The father and head of a family, being constituted a member of a religious society, his wife and minor children, every reasonable indulgence for conscience sake being as necessary in the one case as in the other, would be as much under his direction, as to where they should worship, as if his family had been named. His liability to be taxed, according to the laws of Massachusetts, for the polls of his male children, from sixteen to twenty-one, would be the same. It is a tax imposed not on them, but on him, for the income he is supposed to derive from their earnings; which is as proper a subject of taxation, as income derived from property or other sources.

The families of the corporators named, may be presumed to have been included in the act at their solicitation, as a privilege to them; and in thus choosing for their wives and children, they exercised a prerogative, incident to the relation in which they stood. Their wives had voluntarily united their destiny with their husbands; and the Author of their being had confided their offspring to their care, and had implanted in their bosoms natural affection, to quicken them

in the performance of their parental duties. That the corporators named, were solicitous that each member of their families should participate in the privileges derived from the act, may well be presumed from the desire they must have felt that they should continue to unite with them in public worship; assuming as they did, that they would most probably espouse and profess the religious opinions, in which they had been educated. That this was their intention, as well as that of the legislature, is further supported by the consideration, that the only mode provided by the act, or by any other law then existing, by which any person could become a member of that society, was limited in its operation to the term of one year, after the passage of the act. If the minor children of the persons named were not incorporated, all who became of age after the year, would remain without any connection with the religious society of their parents, in which they were brought up; and whatever might be their option, there existed no legal mode, by which they could be received as such. There was no occasion for a derivative, qualified, and restricted membership. If the family were made members, it must have been with all the privileges appertaining thereto; a right to continue such, and on the part of the male members, to act and vote, upon arriving at the legal age; a right inchoate in minority, consummate at majority. It would be most extraordinary to regard them as members, until the moment arrived when they could act in that capacity, and to seize upon that moment, as the period when their membership should cease and be dissolved.

If this reasoning be correct, the plaintiff, when he became of age, was a member of the universalists' society, whose faith he continued to profess. Has he, since that time, ceased to be a member, by his own act, or by operation of law? Until 1811, when the act respecting public worship and religious freedom passed, no mode existed in his case, except the special one in the act establishing the society, which expired in a year from its date, of which he could avail himself to dissolve the connexion. The condition in which he stood, up to that period, was no greater restriction upon the freedom of his will, or of his right of election, when he attained to years of maturity, than if he had then by law become a member of the territorial

parish.   By the general law of 1811, a mode of changing his paro-
chial relations was established ; but of that mode he has not availed
himself.   His attending the congregational meeting, buying a pew in
their meeting house, or submitting to be taxed by that society, was
not by law equivalent to the mode prescribed.   That was not stated
by way of example, not inconsistent with other evidence, but was the
grant of a new privilege to be exercised in the manner appointed, in-
tended to avoid uncertainty, and to give seasonable notice to all con-
cerned.   It is not pretended that the plaintiff has been received a mem-
ber of the first parish, in conformity with the provisions of the parish
act of Maine.   It results therefore, that in *April* 1825, the plain-
tiff was a member of the universalist society, and his vote in the
first parish legally and properly refused by the defendant.

There is nothing in the case of *Lord v. Chamberlain*, 2. *Greenl.*
67, inconsistent with this opinion.   That case does not apply to a
minor, when he arrives at full age, who, by an act of incorporation,
has been made a member of a poll parish.

*Plaintiff nonsuit.*