## UNITED STATES *ex rel.* WATSON *v.* PORT OF MOBILE.[*]

*(Circuit Court, S. D. Alabama.   June, 1882.)*

1. MUNICIPAL CORPORATION—SUBSEQUENT LEGISLATION.

A judgment having been rendered against a municipal corporation, subsequent legislation by the state, restricting the powers of the administrative officers of such corporation, must be disregarded so far as it impairs the remedy of the judgment creditors.

2. SAME—SAME.

Where, at the time of the contract, a creditor of a municipal corporation had a right, after obtaining a judgment against the corporation, to compel by *mandamus* the officials of the corporation to levy a tax to pay this judgment, if the legislature of the state abolishes that corporation and creates another in its place before the creditor obtains judgment, he may proceed to judgment against the new corporation, and compel (by *mandamus*) the taxing power thereof to levy a tax to pay the judgment. As long as his remedy is unaffected he cannot complain of the legislation.

PARDEE, C. J.   The relator having brought suit in this court against the respondent, the corporation known as the port of Mobile, as the successor of the corporation known as the mayor, aldermen, and common council of the city of Mobile, on certain bonds issued by the latter, under legislative authority, to aid in the construction of the Mobile & Great Northern Railroad Company, recovered an absolute judgment.   Failing to collect his judgment by *fi. fa.*, he has sued out a *mandamus* to compel the board of police, the authorities of the port of Mobile, to assess, levy, and cause to be collected a sufficient tax on the taxable property within the corporation to pay his judgment and costs.   To the alternative writ the respondents have demurred on the ground that the legislation referred to in the petition does not require the defendants named, as police commissioners of Mobile, to cause to be assessed, levied, and collected the taxes which the petition prays to have assessed, levied, and collected.   Without waiving demurrer respondents then filed a return, admitting the judgment to have been rendered as claimed, the issuance of execution, and its return unsatisfied, and the contract under which the bonds

*Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

were issued, but denying that the port of Mobile is the successor of the old corporation, bound for its debts and duties, that the respondents have any legal right to levy and cause to be collected the tax demanded, and averring that by the charter of the port of Mobile they are restricted in the amount and purposes of taxation, that the present territorial limits of the port of Mobile do not embrace one-half of the territory contained in the old corporation when the bonds were issued, and that relator should proceed by equity, etc. To this return the relator has demurred on several grounds, mainly for its insufficiency. The case is submitted on both demurrers. The liability of the port of Mobile for the relator's judgment is settled by the judgment; all questions in the case back of that judgment are *res adjudicata.* See *U. S.* v. *New Orleans,* 98 U. S. 395; *Wolff* v. *New Orleans,* 103 U. S. 360.

The judgment settles all questions as to changes of municipal territory, as to the successorship of the port of Mobile to the old corporation, and as to the full and absolute liability of the port of Mobile to pay the debt due relator, as ascertained by judgment. The judgment having been rendered in June, 1880, the legislation of the state of Alabama (passed in 1880, 1881) thereafter, restricting the powers of the police board of the port of Mobile in reference to the amount and purposes of taxation, must be disregarded, so far as it impairs the relator's remedy under his judgment. The question, then, in this case, may be reduced to this: Has the legislation of 1879 of the state of Alabama the effect of taking away the relator's contract right to have the taxing authority of the city of Mobile levy and collect a sufficient tax to pay and satisfy his bonds and interest? As I understand this case, but for that legislation his right would be indisputable, (see 36 Ala. 410;) and it may be, as counsel for respondents argue, that the relator has the right to claim the whole legislation unconstitutional, null, and void, so far as it affects relator, under both the state and federal constitution; but I do not think that the conclusions of counsel necessarily follow, *i. e.,* that the old corporation and its officers should be kept in existence for the purpose of enforcing relator's contract, and that relator, having submitted to the legislation so far as to recover his judgment against the new corporation as the successors of the old, is bound to the full extent of the legislation. An examination of the acts of 1879 in question, keeping in view the force and effect of the judgment aforesaid, shows that the substantial effect of the legislation, as far as relator is concerned, may be reduced to the

following: The corporate name has been changed; the corporate officers are changed as to persons, title, and duties; the outstanding debts and obligations, as well as all assets and property of the corporation, are put into the hands of commissioners and chancery court for liquidation and settlement, and a limitation is placed on the amount of taxation. Now, the relator may be bound to take notice of these matters, but none of them affect injuriously his contract, as the case is made up by the judgment and answer of respondents; for the judgment fixes the liability, and the answer does not show that the taxation as limited is insufficient to furnish the alimony of the city and pay relator's demands besides. I think no one will claim that if the aforesaid changes had been brought about by amendments to the old charter, as they might have been, that relator would have lost his remedy thereby. How, then, can he have lost it now? The substance of relator's contract is that the taxing authority of the corporation shall levy and collect a certain amount by taxation to meet his demands. It can be of no moment to him what particular officers shall exercise that taxing power, or what may be the particular title of the officer, or the particular name of the corporation, provided it is the same corporation or body he has contracted with. These matters are within the legislative control, and as long as relator's remedy is not affected he cannot complain. The respondents in this case have now the taxing power of the corporation bound to the relator. It would seem that they should be compelled to perform their duties under the contract.

That the alternative writ reads "to assess, levy, and cause to be collected a special tax," etc., has been made the ground for considerable argument, it being claimed that respondents have nothing to do with the assessments of property, i. e., valuation of property, for taxing purposes, and nothing to do with the collection of taxes. I do not understand the words "assess" and "levy," in the writ, to apply to the valuation of taxable property for taxing purposes, but to mean to lay a tax on the taxable property as the same is already valued for ordinary taxing purposes, no matter whether such taxation tableau is made up by the state or city authority. The charter of the city gives the respondents certain powers and control over the tax collector, such as his appointment and removal in certain cases, and the designation of his duties. "Cause to be collected," as used in the writ, evidently means that so far as respondents have control over the performance of duties by the tax collector they shall exercise that control in favor of the collection of the tax. The case of *Ex parte*

*Rowland* goes to the extent of holding them excused when they have performed their duties under the law in the premises.

Following the line of argument on which this case has been presented, it therefore seems clear that the *mandamus* asked should be made peremptory, but it is a very grave question whether so much argument is necessary.

If we take the case of *Wolff* v. *New Orleans, supra*, it seems that the judgment rendered in favor of relator against the port of Mobile is conclusive as to all the defences set up against the *mandamus*. When the bonds were issued upon which the judgment was received, the city was by its charter "invested with all the powers, rights, privileges, and immunities incident to a municipal corporation, and necessary for the proper government of the same," and it could have provided the means by taxation for their payment when they became due. The judgment in this case fixes the *status* and liability of the "port of Mobile" as the same corporation that issued the bonds and contracted for their payment. The municipal body that created the obligations upon which judgment of the relator was recovered existing, with her organization complete, having officers for the assessment and collection of taxes, there are parties upon whom the court can act. The court, therefore, treating as invalid and void the legislation abrogating or restricting the power of taxation delegated to the municipality upon the faith of which contracts were made with her, and upon the continuance of which alone they can be enforced, can proceed, and by *mandamus* compel, at the instance of the parties interested, the exercise of that power, as if no such legislation had ever been attempted. This reasoning ought to be conclusive against the port of Mobile, as it was against the city of New Orleans, whose charter had also been repealed and a new one with widely-different boundaries granted her, whose government and officers had been entirely changed in name and duties, and who also had been granted a limit on municipal taxation. The question raised under the authority of *Heine* v. *Levee Com'r*, 19 Wall. 655, and *Barkley* v. *Levee Com'r*, 93 U. S. 258, are manifestly settled by the judgment of relator, which found the responsible debtor in existence, which the court can act on. *Morgan* v. *Beloit*, 7 Wall. 613, was an entirely different case from this, and conflicts in nowise with any proposition advanced here.

Considering all of the foregoing reasons, judgment will be entered overruling demurrer to petition for *mandamus*, sustaining demurrer to respondent's answer, and making the *mandamus* herein peremptory, with costs.

NOTE. The charter of a public corporation, created for the purposes of government, cannot be considered a contract, (*Bradford* v. *Cary*, 5 Me. 339; *Marietta* v. *Fearing*, 4 Ohio, 429; *Governor* v. *Gridley*, 1 Miss. 328; *People* v. *Morris*, 13 Wend. 525; *Dartmouth College* v. *Woodward*, 4 Wheat. 694; *East Hartford* v. *Hartford Bridge*, 10 How. 511,) and the grant of the franchise may at any time be resumed, (*People* v. *Pinckney*, 32 N. Y. 377.) A power to alter and change public corporations, and to adapt them to the purposes intended, is implied. *State* v. *Railroad*, 3 How. 534; *Amey* v. *Allegheny City*, 24 How. 364; *Trustees* v. *Tatman*, 13 Ill. 27; *Bridgeport* v. *Hubbell*, 5 Conn. 237; *Bush* v. *Shipman*, 5 Ill. 186; *Mills* v. *Williams*, 11 Ired. 558; *Gutzweller* v. *People*, 14 Ill. 142; *North Yarmouth* v. *Skillings*, 45 Me. 133; *Mayor* v. *State*, 15 Md. 376. But see *Trustees* v. *Aberdeen*, 21 Miss. 645; *Bristol* v. *New Chester*, 3 N. H. 524; *Paterson* v. *Society*, 24 N. J. Law, 385; *St. Louis* v. *Russell*, 9 Mo. 507; *People* v. *Morris*, 13 Wend. 325. Transactions between the legislature and municipal corporations are in the nature of legislation rather than of compact. *Hartford* v. *Hartford Bridge Co.* 10 How. 511; *Trustees* v. *Tatman*, 13 Ill. 27; *Reynolds* v. *Baldwin*, 1 La. Ann. 162; *Police Jury* v. *Shreveport*, 5 La. Ann. 661; *Layton* v. *New Orleans*, 12 La. Ann. 515. A statute may prescribe a remedy, if there be none; and if a remedy given be as good as that taken away, the obligation is not impaired. *Mason* v. *Haile*, 12 Wheat. 370; *Milne* v. *Huber*, 3 McLean, 212; *Simmons* v. *Hanover*, 23 Pick 188; *Commercial Bank* v. *State*, 12 Miss. 439; *Wheat* v. *State*, Minor, 199; *Anon.* 2 Stewt. 228; *Bronson* v. *Kinzie*, 1 How. 311; *Davis* v. *Ballard*, 1 J. J. Marsh. 563; *McMillan* v. *Sprague*, 4 How. (Miss.) 647; *Lapsley* v. *Brashears*, 5 Litt. 47; *Townsend* v. *Townsend*, Peck, (Tenn.) 1; *Sav. Inst.* v. *Makin*, 23 Mo. 360; *Longfellow* v. *Patrick*, 25 Me. 18; *Van Rensselaer* v. *Snyder*, 13 N. Y. 299; *In re Trust. Pub. Sch.* 31 N. Y. 574; *Morse* v. *Goold*, 11 N. Y. 281; *Pratt* v. *Jones*, 25 Vt. 303.

States may pass remedial laws, but not such as impair vested rights, or create personal liabilities, or impose new obligations or duties. *Braddow* v. *Green*, 7 Humph. 130; *Rich* v. *Flanders*, 39 N. H. 304; *De Cordova* v. *Galveston*, 4 Tex. 470; *Hope* v. *Johnson*, 2 Yerg. 125; *Vanzandt* v. *Waddell*, Id. 260; *Coffin* v. *Rich*, 45 Me. 507; *Kennebec Purch.* v. *Laboree*, 2 Me. 275. So long as contracts are submitted to the ordinary and regular course of justice, and existing remedies are preserved in substance, the obligation of the contract is not impaired, (*Holmes* v. *Lansing*, 3 Johns. Cas. 73;) but if the change materially affects rights and interests it is so far a violation of the compact, (*Green* v. *Biddle*, 8 Wheat. 1; *Von Hoffman* v. *Quincy*, 4 Wall. 535; *Billings* v. *Riggs*, 56 Ill. 483.) A state legislature may regulate the remedy and mode of proceeding of past as well as future contracts, but not so as to take away all remedy. *Ex parte Pollard*, 40 Ala. 77.—[ED.