BREWIS *v.* CITY OF DULUTH AND VILLAGE OF DULUTH.

*(Circuit Court, D. Minnesota.   June Term, 1882.)*

1. MUNICIPAL CORPORATION—DIVISION OF TERRITORY—LIABILITY FOR DEBTS—REMEDY.

When an old corporation is dissolved, and a new one created, substantially embracing the same territory, the new municipality becomes liable, as successor, for the debts of the old, although the respective charters differ, and consequently an action at law will lie.

2. SAME—POWER OF LEGISLATURE—APPORTIONMENT OF LIABILITY.

Cities, towns, and counties are mere political subdivisions of the state, and are at all times subject to legislative control, and may be divided, subdivided, or abolished.   It is competent for the legislature, in making such subdivisions, to apportion the obligations of the divided territory, and in the absence of such legislative apportionment, the old municipality, if still existing, must bear the entire debt; but if a municipality has been abolished, and its territory divided among other municipalities, the creditor may pursue his demand against the latter for their equitable portions thereof.

In Equity.

*Williams & Davidson,* for plaintiff.

*J. M. Gilman,* for defendant.

Before TREAT and NELSON, JJ.

PER CURIAM.   On the demurrer in this case two points were decided which are in accord with right, reason, and authority:  *First,* that under the averments in the bill proceedings in equity furnish an appropriate remedy; and, *second,* that if the facts averred are true, the city and village corporations are respectively liable for this indebtedness in the proportions of the taxable property in each.

The bonds and coupons sued on were executed and delivered by the city before the village was carved out of the city territory, and therefore *at law* only the corporate party issuing them could be pursued so long as its corporate existence remained.   When an old corporation is dissolved and a new one created substantially embracing the same territory as the old, the new municipality becomes liable as successor for the debts of the old, although the respective charters differ in many respects, and consequently an action at law will lie. *Broughton* v. *Pensacola,* 93 U. S. 266.

If the repeal of the old and the grant of the new charter occur pending legal proceedings, the action may be revived by *scire facias* against the new municipality, and in some states by suggestion of record.   *O'Connor* v. *City of Memphis,* 13 Cent. Law J. 150.

Cities, towns, and counties, being mere political subdivisions of the state, are at all times subject to legislative control, and may be abolished, divided, and subdivided. New municipalities may be carved out of them or portions of the territory detached and annexed to another municipality, etc. It is competent for the legislature, in making such divisions or annexations, to apportion the obligations of the divided territory as to it may seem just. In the absence of such legislative apportionment the old municipality, if still existing, must bear the entire debt, and when paid by it cannot enforce contributions from the municipality to which parts of its taxable property have been annexed. If a municipality has been abolished, and its territory divided among other municipalities, then a creditor may pursue his demand against the latter for their equitable proportions thereof. These general doctrines have been fully recognized by the United States supreme court and other courts, and also by text writers. *Laramie County* v. *Albany County,* 92 U. S. 307; *Broughton* v. *Pensacola, supra; New Orleans* v. *Clark,* 95 U. S. 644; *Mt. Pleasant* v. *Beckwith,* 100 U. S. 514; *State* v. *Lake City,* 25 Minn. 404; Dillon, Mun. Corp. § 124 *et seq.; O'Connor* v. *City of Memphis, supra.* It is unnecessary to review the many cases cited and commented upon in the foregoing authorities, for nothing can be added to their cogency.

The opinion of this court on the demurrer states, with sufficient clearness, the general aspect of the case as then presented, including the acts of the legislature whereby the village was created and the debt of the city apportioned. The scheme thus devised, to the possible injury of the creditors, may not appear worthy of special commendation. Yet, as the legislature, in its wisdom and under its authority to control city and village corporations, passed the respective acts named, they are controlling. The evidence offered, so far from supporting the allegations of the bill, shows that ample means remain with the city to meet the plaintiff's demand; that the apportionment at the time made may not seem entirely equitable, but that, under the increased growth and prosperity of the city,— largely due, it may be, to the successful operation of said scheme,—it is now in a condition to meet its matured obligations, and, prospectively, all others as they mature. It is well known that many municipalities, with a view to their future interests and growth, incur obligations not to mature for years, in the expectation that at their maturity the taxable property will have so increased that the burden

of payment will be comparatively light. Hence, it is not proper to base conclusions concerning such obligations entirely on the condition of affairs when such obligations were assumed for the purposes mentioned. What is the present condition of the city? Can it meet the coupons accruing? According to the testimony, the taxable property therein has already increased nearly or quite fourfold, and is advancing rapidly. There is, therefore, no legal or equitable reason, in the light of authority, for going behind the legislative apportionment. The broad language of most authorities indicates that, under no circumstances, can a court go behind the legislative apportionment so as to charge such new municipality with more of the old indebtedness than the legislature assigned to it. But, certainly, such broad doctrines are subject to the qualifications stated in the former opinion of this court, viz.:

"When the corporation which created the debt is shorn of its population and taxable property to such an extent that there is no reasonable expectation of its meeting the present indebtedness, and it is unable so to do, the creditors at least can enforce a proportionate share of their obligations against the two corporations carved out of one. Both are liable to the extent of the property set off to each respectively."

The doctrine thus announced must commend itself to every just and right-thinking person. While the general rule obtains, that the old corporation remains liable for the old debts, yet when it is shorn by legislative enactment of the means to meet the same, the corporation to which the excised territory has been annexed cannot receive the entire benefit thereof to the practical repudiation of subsisting obligations. Were this permissible, no court should hesitate to pronounce the legislative act whereby the obligation of outstanding contracts is impaired—nay, practically destroyed—unconstitutional and void. Under the averments of the bill such a case was presented; under the evidence such a condition of affairs does not exist. The case, as now before the court, is very different from that presented on demurrer.

In *O'Connor* v. *City of Memphis, supra*, the learned judge, after stating the broad rule above referred to, adds, significantly: "A qualification of the latter part of the rule may be assumed, although the point seems never to have arisen in judgment where the municipality has been so reduced in population and territory as to be unable to meet its liabilities." It was that qualification which this court recognized in its opinion on the demurrer, and which it still holds

to be sound and just. It would be enforced unhesitatingly in this cause did the facts justify. As it is, however, no such qualification is required, for the city has ample means to meet the plaintiff's demand now in suit, and his remedy is at law.

The bill is dismissed, with costs.